Case No. 25-3128, U.S. Department of Labor v. Americare Healthcare Services et al. Oral Argument, 15 minutes per side. Mr. Conde for the appellants. Good evening, Your Honors, and may it please the Court. James Conde for appellants Delia Dicari and Americare. In 1974, Congress expanded the Fair Labor Standards Act to domestic service. In doing so, however, Congress included two exemptions that are critical to this appeal. First, the exemption for so-called companionship services. The problem with companionship services is that it typically involves a degree of household work, such as cleaning. To decide such questions, Congress vested the Department of Labor with specific authority to define and delimit the terms of the companionship services exemption. The second exemption I'd issue in this appeal is very different. It's the living exemption. It applies to any employee employed in domestic service who resides where she or he works. Because the text of the exemption is self-executing and straightforward, Congress emphatically did not vest the Department of Labor with any authority to define or delimit the terms of the living exemption. Counsel, I guess that's the question for me. There is the authority given to define and delimit the terms of the companionship exemption, which would include the term domestic service employment. And that is not exactly repeated in the living exemption, but it's pretty close. It says employed in domestic service. So I guess I'm interested in why isn't the express authority given to the Labor Department for the companionship exemption terms? Why doesn't that just carry over to be able to define the terms for the living exemption? So let me answer that in two different ways. First, I think the question is sort of hypothetical in this case because the Department of Labor has never said that it is interpreting the term domestic service. In the third party employer rule. So the Department of Labor has never relied on that specific term to say that's what it's doing in this case. And in fact, it concedes that the employees here are employed in domestic service as that term is used in the statute. There's a specific regulation defining domestic service employment and the department agrees that we satisfy that. And I think one reason why you think it would not carry over is of course that Congress included the specific delegation in one part of the statute but not in the rest of the provisions. And in fact, if you wanted that delegation to carry over, what you would expect is Congress would have vested the Department of Labor generally with authority to find the term domestic service throughout the statute, which of course is not what Congress did here. And I would say that it would also be an extraordinary delegation if that is the case because it would authorize, in the department's own view, it would authorize the department to essentially carve out any employees employed by third party employers from the scope of the statute, right? Because the term domestic service is used in the coverage provisions as well. But isn't what the department was doing here essentially the same thing it was doing for the regulation that was in Koch in which the Supreme Court said that that defined and delimited authority was given to the department to define this term? Isn't this the same thing that was happening in Koch only they're just reaching a different conclusion? Well, so it's not exactly the same thing that is happening in Koch. So as I understand it, the 1975 rule that was in place for 40 years was premised on the idea that the companionship services and the limit exemption do not speak about employers at all, but simply talk about employees and the activities they perform. So Congress said the best, sorry, the Department of Labor said the best reading of these provisions, we're not construing the term domestic service or anything at all. We're just construing what these exemptions mean and trying to give them their best reading. And that's what the 1975 rule was doing. And the court in Koch, to be sure, said that there were gaps in the term domestic service. But I think the court was applying Chevron as we explained in our brief. So none of that reasoning is valid after Loper-Bright. But are we in a Loper-Bright situation here? Because this is not a Chevron case about implications from ambiguities in the statute, is it? It is, in fact, an express delegation case. Well, so we agree with that with respect to the companionship services exemption. We're not disputing that there's a specific grant of authority to define or delimit the terms in that exemption specifically. Our argument that this is, you know, that the court has to provide the best interpretation of the statute de novo applies only to the living exemption. We think that with respect to the companionship services exemption, the Department of Labor here is exceeding the boundaries of its discretion. But don't they overlap? Don't the two exemptions overlap because both apply to live-in companionship service workers? No, they don't overlap. So there's one provision that applies for live-in employees regardless of whether they're providing companionship services or not. And that provision does not include any vesting language, and it's fairly easy to apply, whereas the companionship services exemption includes a bunch of terms that are more difficult to apply, such as what does companionship services mean, who is unable to take care of themselves, et cetera, et cetera. So these are very two distinct provisions. Only one of them was at issue in Koch. And even then, Koch applied Chevron to interpret that provision. And none of the reason you see… My understanding of your argument is that the 2013 third-party regulation conflicts with the best reading of the live-in exemption, and that makes it invalid as to either exemption. Isn't that your argument? So that's certainly one of our arguments. We're saying, at the very least, you have to say that it's not the best reading of the live-in exemption. But doesn't that mean that they overlap? The very rationale of that basis is that these are two overlapping exemptions. No. So we're saying it's not severable for a separate reason. We're saying it's not severable because the Department of Labor put the two interpretations in a single rule. So the Department of Labor's position is definitely that they overlap, but it's not our position. And the reason it's not severable, it's because the Department of Labor puts the rule in a single rule and provide the same policy and sort of Chevron-based reasoning to support the rule. So now our argument… I'm struggling with what Chevron-based reasoning are you referring to when Chevron had to do with looking at implications from ambiguity in the statute. Here we are asking the question of does the express delegation in the companionship services exemption not apply also to the live-in exemption because of the continuity of the references to domestic service employment? Because it applies to both, doesn't it? No, I disagree with that, Your Honor. Congress very specifically vested the Department of Labor with only the authority to define or delimit the terms in the companionship services exemption. And add to your answer also then, what language in that statutory text confines the scope of the express delegation only to the companionship services exemption? Where do you find that in the text of the statute? So let me walk back a little bit. So both the overtime and live-in exemptions are located in different parts of Section 213. So the live-in exemption is located in Paragraph B. And that paragraph begins with the words, shall not, right? Overtime shall not apply, which is a command that admits of no discretion, right? And so what the Department of Labor wants you to say is that the word shall not really mean shall not unless the Department of Labor imports this interpretation from a separate paragraph into this other provision to narrow the exception. Okay, one's 13A and one's 13B, right? Right. So back to back. Right, but both of them are preceded by the term shall not. So that's a very odd way to give an agency discretion, right? If Congress is saying shall not, the normal understanding is that Congress did not intend to give the agency any discretion. So for that discretion to come back into the fold, I think you need that delegation specifically in the provision itself and the exemption itself, which the live-in exemption does not include that kind of delegation. So would you say that you read domestic service employment in the companionship services exemption to mean something different than employed in domestic service in the live-in exemption? No, that's not our position at all. We agree that domestic service means the same thing, and the Department of Labor agrees that it means the same thing. As I said, I don't think the Department of Labor in this case is relying at all on the term companionship services, or sorry, on the term domestic service in saying that it doesn't include employees of third-party employers, because if that were its reading of domestic service, then the Department of Labor would have to say that for purposes of the coverage provisions, folks employed by third-party employers are also not covered at all by the 1974 amendments, which would be kind of extraordinary. It would essentially allow the Department of Labor to undo the 1974 amendments with respect to a whole bunch of categories of employees, which I don't think was what Congress intended at all when it enacted this very specific vesting language as part of only the companionship services exemption. Perhaps we've carried you far afield. You have your rebuttal time. Unless there's something else you want to add, we'll go ahead and hear from the other side, unless you have something else. No, that's okay, Your Honor. You can proceed to the Department. Okay, thank you. Thank you, Your Honor. Good afternoon. May it please the Court, my name is Lindsay Rothfeder, Secretary of Labor. Jumping right in, Your Honor, the Department does use its authority to define the limit as derived from 213A15 and 29B to promulgate the third-party regulation. As this Court recently stated in Pickens, define and delimit includes not one but two types of authority, both to define and to delimit, delimit meaning mark boundaries or limit, and it's exactly that marking boundaries or limiting that the Department is doing in its exercise of discretion at the third-party regulation at 109. As Your Honors noted, the phrase employed in domestic service is repeated in both delegations, particularly because the delegation conveys authority to define and delimit terms. It is striking that that term is used once in that, and then again a few lines later, and again with the backdrop of the general delegation found at 29B, which provides the Department with authority to prescribe necessary rules with regard to the 1974 amendments. So is it the Department's position that employees that are employed by companies outside the home, but they're involved in domestic service employment, that they're not necessarily falling within the definition of domestic service employment? It seems kind of odd that that would be the interpretation. No, Your Honor. The definition remains constant, but as to the delimitation of the exemptions, it is that where the Department said that those exemptions cannot be accessed as a limitation, in keeping with the power to delimit by third-party. So you're not really defining the term domestic service employment, you're defining the scope of the exemption. Is that the position? Delimiting the scope of the exemption, yes, Your Honor. Okay. Also, as I understand it, there's currently a rule pending, or I don't know if it's gone into effect, which would return the exemption scope to what it was pre-2013. Is that correct? Yes, Your Honor. The Department promulgated a notice of proposed rulemaking, proposing to return to the 1975 rule. So that's not occurred yet, but it's pending? It is non-final, and there is no specific date when it will occur, and it is not certain that it will occur. Today, the rule that is in effect is the 2013 rule, and the Department stands by its briefing. And these violations relate to things that occurred in 2018, 2019, through 2024. The rule in effect then was also the 2013 rule, and the Department does take the position that if there is a rule change, whatever it is, will not be retroactive. So we think that that's why this case should go forward today, notwithstanding that notice of proposed rulemaking. Well, it seems odd to me that activity that the company here is engaged in would have been legal pre-2013. It's, according to the Department, illegal now, but the Department actually has regulations that would make it legal in the future, assuming that this rule... And there's no change in the statute. Congress has not done anything to change the statute, and we have this regime where things are legal sometimes and they're illegal other times, kind of at the whim of the Department. That doesn't seem like the rule of law to me. Your Honor, as I mentioned, the rule was very much in effect during the time period when these violations occurred. The employees who worked these hours were at that time under that law were entitled to and probably understood their entitlement to minimum wage and overtime. Well, the law was the same. The law was the same the whole time, as in the statute was the same. Is that correct? Yes, under the regulations, thank you, Your Honor. Okay, I'm just having trouble grasping how activity can sometimes be legal and sometimes illegal under the same statute. Well, certainly, Your Honor, in FCC v. Fox and recently this term in wages v. White Lions, the Supreme Court reaffirmed the principle that agencies at times are entitled to reverse their positions on regulations so long as they display awareness that they're changing their position and that their reversal is grounded in reasonableness. So I think sometimes the Supreme Court recognizes that that happens, that circumstances change. So can you maybe address the reasonableness of the 2013 change, especially in light of the fact that imminently there may be another change swinging in 180 degrees? Certainly, Your Honor. Both Weil and the district court opinion and to some extent Cope shed light on the reasonableness of the 2013 rule. Weil found, among other reasons, that the 2013 rule was reasonable because it accorded with the purpose of the 1974 amendments to expand coverage. And Weil further found that the department's interpretation was reasonable insofar as Congress would not have intended to effectuate a rollback on the scale that had occurred by 2013 because the employees who were being excluded, the employees of third-party agencies, would have actually been covered prior to the statutory change under enterprise provisions. And Weil found, therefore, that the department's 2013 regulation was reasonable because it actually effectuated the intent of the 1974 amendments when applied to current circumstances. This is perhaps unfair, but I just wonder, have the circumstances changed such that it would no longer be reasonable to apply them in the same way? I mean, I'm familiar with the case law, obviously, but I'm just trying to figure out what's causing all this. Respectfully, Your Honor, as it is a non-final rule, I cannot comment on what the basis for the final rule would be. Can you comment on your opposing counsel's argument that these exemptions allow the department to regulate employees but not employers? I think my question is, why isn't it foundational to the Fair Labor Standards Act that what is being regulated is the relationship between employees and employers? Well, as Koch itself found, and I would like to speak to why Koch survived, but as Koch itself found, the regulations, you know, provide the department with the authority to define and limit, and within that broad delegation, the treatment of third-party employers is within those delegations. Your opposing counsel suggests that you have not, or there's not been a raising of this domestic service definition as showing that there is express delegation to both the live-in and the companionship services exemption. But I read your supplemental authority and response to it to address that very thing and to make the claim that define and delimit key terms serves as a source of agency authority for both exemptions. Is that the position you take, that it applies to both exemptions? Yes, Your Honor. Both exemptions, the authority for both exemptions comes from both the define and delimit instruction as well as the instruction to promulgate necessary regulations at 29B. If there are no further questions on this line, I would like to turn to why Koch survives Loeb or Bright. Specifically, Koch survives Loeb or Bright because Koch does not, as Judge Schrench already indicated, rest on a finding of ambiguity or silence. It rests on a finding of express delegation. Koch, only somewhat glancingly citing to Chevron, really almost seems to anticipate the test that's advanced by Loeb or Bright. Specifically, Koch identifies express delegations at 215A13 and 29B, just as Loeb or Bright instructs as the first step of analysis. And as the second step, Koch fixes and polices the boundaries of those delegations, specifically identifying that the department's authority to determine the treatment of third parties is within the boundaries of those delegations in either direction. And then finally, Koch determines that the department's rule in that instance was reasonable, the 1975 rule. Essentially, Koch asks and answers the same questions that Loeb or Bright instructs this court to answer here today. It would be very difficult for this court to ask the same questions without contravening the logic of Koch. And for that reason, we think that it is quite distinguishable from cases such as Brand X that were much more grounded in a finding of ambiguity, as this court found in MCP. Does it matter to that argument that each time the department has sought to regulate the overtime rights of live-in and companionship workers, what that was, that was 75, that was 2013, even in 2025, that it promulgated and proposed parallel regulations for both exemptions? Why is that necessary if they are not united in their coverage? The regulations at A, B and C are somewhat parallel instructor and they all cite to the same authority and they all delimit third parties from accessing the exemptions to minimum wage and overtime, third parties who are not family members. I think that is a natural outcropping of the fact that the delegations are the same. Do you think that the define and delimit delegation that is there in the companionship exemption is limited with respect to the live-in exemption to those instances where the live-in employee is also doing companionship services, so to speak? No, Your Honor. And why not? Well, factually speaking, certainly the vast majority of live-in employees these days are performing home healthcare services like the employees of descendants. The limitation on third-party employers is not limited to home healthcare employees. The delimitation applies to all third-party employees,  Does that answer your question? No, I don't think so, actually. And my question is more with respect to the type of work that's being done, not third-party employers. I mean, both of these exemptions apply to third-party employers, so that's not my question. My question is for a live-in worker, if they are, do you think that the scope of the delegation that Congress has given is limited to the type of work that is companionship work? No, Your Honor. I think while that was a changed circumstance that Weil certainly noted as a basis for determining the Department's approach to be reasonable, I think that additionally, as Weil noted, that the overarching intent of the statute to expand coverage to domestic work where that work is a vocation, and to the extent that third-party employment is a strong indication or proxy of third-party employment, even where it moves past the home health services, the rationale still remains the same. I think we may be out of questions. Do you have anything else to add? No, Your Honor. Okay, thank you. Is there a rebuttal? Yes, Your Honor. So, I do think this case is basically about the rule of law. Loper Bright says the courts going forward have to follow the single best reading of the statute, and to be sure there are situations in which Congress delegates discretion to an agency. But as this court has recognized in Pickens and Maxima Reyes, and as Loper Bright itself says, there's a very strong presumption in favor of independent judicial review on questions of law. And that's the presumption that governs the living exemption. As we have explained, for Congress to include a power to define or delimit the term domestic service in the living exemption in a parenthetical of a different exemption tucked into a different paragraph, that would be sort of an extraordinary, you know, departure from the principles of the APA and the strong presumption of judicial review. So, this new argument that has come up this morning, that somehow the power to define or delimit the term domestic service employment, which, by the way, is a different term, as you noted, Judge Bush, in the living exemption. There's no redundancy there. It just uses domestic service simpliciter, whereas the, you know, companionship services exemption uses this sort of redundant term employed in domestic service employment. Now, I don't think that makes any difference in this case, because the Department of Labor has never said that it was defining or delimiting that term until maybe today. I think Judge Strange pointed to the supplemental, you know, the response for a 28-J letter, but an agency has to provide its legal explanations and justifications in a rule. That's a basic principle of administrative law under the Chenery Principle. An agency has to explain what it is doing in the rule itself and not rely on post-doc interpretations by agency counsel. And here we have something worse than that. The Department of Labor's complaint says that these employees are employed in domestic service in paragraph eight of its complaint. Throughout this litigation, the Department of Labor has never said that these employees are not employed in domestic service. It has said so throughout this case. And so I don't think the Department of Labor can now, you know, the 11th hour switch its interpretation and say it is trying to interpret the term domestic service, which is never what it has claimed to be doing. Rather, what the Department of Labor has always claimed to be doing was extending the Chevron reasoning of Koch to a different provision that it was not at all involved in Koch. And that is essentially what this case is about. Because this court has to follow the best reading of the statute under the APA. The district court's judgment should be reversed and the rules should be vacated. Okay, thank you very much. We appreciate the arguments. We will take the case under submission and the clerk can adjourn the court.